**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

_____

**KEVIN BECKER,**

                             **Plaintiff,**                 **07-CV-343A(Sr)**

**v.**

**BUFFALO PUBLIC SCHOOLS,**

                             **Defendant.**

_____

## REPORT, RECOMMENDATION AND ORDER

This case was referred to the undersigned by the Hon. Richard J. Arcara, pursuant to 28 U.S.C. § 636(b)(1), for all pretrial matters and to hear and report upon dispositive motions. Dkt. #6.

Currently before the Court is defendant's motion (Dkt. #48) for summary judgment pursuant to Fed. R. Civ. P. 56. Upon consideration of the record as a whole, including the parties' written submissions and oral arguments, and for the reasons that follow, it is recommended that defendant's motion be granted in part and denied in part.

## BACKGROUND

Plaintiff, Kevin Becker, has been employed by the City of Buffalo Public Schools as a teacher since October 1991. Dkt. #48-4, p. 20. He has a Bachelor of Science Degree in Physical Education, a Bachelor of Arts Degree in Communications, and a Masters Degree in Education. He is certified in New York State to teach health and

physical education, and has maintained his residence within the City of Buffalo at all relevant times. Dkt. # 54-2, p. 18.

Plaintiff has worked for defendant as a temporary teacher on both a full-time and part-time basis, and as a substitute teacher on both a "per diem" and long-term basis. Dkt. #48-22 (Deft. Local Rule 56 Statement), ¶¶ 1-3. He has applied and been interviewed for full-time probationary physical education teaching positions on several occasions, but has never been hired. Dkt. #48-4, pp. 22-25; Dkt. 54-2, pp. 40-44.

On April 17, 2006, plaintiff filed a Charge of Discrimination with the New York State Division of Human Rights ("NYSDHR"), in which he alleged the following:

> I am a qualified individual with a disability. I have been employed by the above named Respondent as a Substitute Teacher in Physical Education since around 1991.
>
> For the past few years, as recently as the beginning of the 2005-2006 school year, I have applied for full-time vacancies as a Physical Education Teacher with the Respondent. I am qualified to do the job, as evidenced by the fact that I have successfully served as a Substitute Teacher for several years. I also meet the residency requirements for teaching in the city. However, the Respondent repeatedly has hired less qualified, inexperienced, younger Teachers to fill the positions. Many of these individuals do not even live in the City of Buffalo. I have repeatedly been promised full-time positions and I was made to jump through hoops to repeatedly apply for the vacancies year after year. In addition, my part-time position was eliminated for the 2005-2006 school year.
>
> I believe I was treated in the above manner based on my disability and age, 41, in violation of Title I of the Americans with Disabilities Act of 1990 and the Age Discrimination Employment Act, respectively.

Dkt. #1, p. 7. The charge was presented to the Equal Employment Opportunity Commission ("EEOC"), which issued a "Dismissal and Notice of Rights" on March 9, 2007, indicating that, "[b]ased on its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes." Dkt. #1, p. 6.

Plaintiff commenced this action, *pro se*, on May 29, 2007, by filing a form "Discrimination Complaint" alleging a violation of the Age Discrimination in Employment Act of 1967, as codified, 29 U.S.C. § 621 *et seq*. ("ADEA"). Dkt. #1, p. 1. Specifically, plaintiff alleges the following:

> Failure to employ me based on my age
>
> Failure to employ me while being told "no jobs"
>
> Failure to hire me while hiring younger candidates
>
> Failure to hire me while being told the [sic] need to hire females
>
> Failure to consider me for full-time employment after being told to fill out application [sic] repeatedly
>
> Failure to employ me as a legal resident in accordance of [sic] Board of Education law

*Id.*, ¶ 19.

In lieu of filing an answer, defendant moved to dismiss the complaint on the following grounds:

• Plaintiff's allegations regarding defendant's refusal to hire him in a full-time position are without merit, given the proof showing that defendant offered him a full-time position in March 2005, and verbally rejected the offer.

• Failure to exhaust available administrative remedies with respect to his claims of discrimination on the basis of sex.

• Failure to allege any facts to support a claim of disability discrimination under the Americans with Disabilities Act of 1990, as codified, 42 U.S.C. §§ 12112-12117 ("ADA").

•	Failure to establish a *prima facie* case of discrimination in violation of the ADEA.

•	Plaintiff cannot support a claim of age discrimination with respect to adverse employment action alleged to have occurred prior to June 16, 2004, when he turned 40 years of age and came within the class protected by the ADEA.  *See* Dkt. #5.

On August 20, 2008, the undersigned issued a Report and Recommendation recommending that defendant's motion to dismiss be denied with respect to plaintiff's claim of age discrimination based on adverse employment action occurring subsequent to June, 2004; granted with respect to plaintiff's claim of sex discrimination; and denied as moot with respect to plaintiff's unpleaded claim of disability discrimination.  Dkt. #12. By Order dated September 11, 2008 (Dkt. #13), Judge Arcara adopted these recommendations and referred the case back to the undersigned for further proceedings with respect to plaintiff's remaining ADEA claim.

Plaintiff continued to prosecute his case *pro se* during the course of initial discovery (including the taking of his deposition in April 2010) and an unsuccessful mediation session in May 2009.  Following his retention of counsel in September 2010, plaintiff moved for leave to amend the complaint, which the undersigned granted over defendant's objection.  *See* Dkt. ##37-44.

In the Amended Complaint, plaintiff sets forth somewhat more detailed allegations in support of his claim that he has applied for full-time positions on multiple occasions, but was passed over in favor of younger, less experienced applicants, several of whom reside outside the City of Buffalo. Dkt. #45, ¶¶ 14-21.  He alleges that defendant did offer him a temporary full-time position in 2005, but he declined the offer

"because the temporary position would have too much uncertainty and he was entitled to a full-time probationary position due to his seniority and residency …" *Id.* at ¶ 17. He claims that this course of conduct amounts to intentional discrimination on the basis of age, and retaliation for filing the charge of discrimination with the NYSDHR, in violation of the ADEA (First and Second Causes of Action) and the New York Human Rights Law, N.Y. Executive Law § 209 *et seq.* (Third and Fourth Causes of Action). *Id.* at ¶¶ 22-33.

At the completion of discovery, defendant moved for summary judgment on the following grounds:

1.     Plaintiff's state law claims should be dismissed because he failed to serve the Board of Education with verified notice of claim as required by New York Education Law § 3813.

2.     Plaintiff's ADEA claims based on adverse employment action alleged to have occurred prior to June 21, 2005 – *i.e.*, 300 days prior to the filing of the discrimination charge with the NYSDHR – should be dismissed as time-barred.

3.     Plaintiff cannot establish that, as of June 15, 2005 or thereafter, he suffered an adverse employment action under circumstances giving rise to an inference of either intentional discrimination because of age, or retaliation for filing the NYSDHR/EEOC charge, as a matter of law.

These grounds are discussed in turn below.

## DISCUSSION

**Summary Judgment**

Rule 56 of the Federal Rules of Civil Procedure provides that, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Although the language of this Rule has been amended in recent years, the well-settled standards for considering a motion for summary judgment remain unchanged. *See, e.g., Faulkner v. Arista Records LLC*, 797 F. Supp. 2d 299, 311 n. 7 (S.D.N.Y. 2011); Fed. R. Civ. P. 56, Committee's notes to 2010 amendments.

Under those standards, the moving party bears the initial burden of establishing that no genuine issue of material fact exists. *Rockland Exposition, Inc. v. Great American Assur. Co.*, 746 F. Supp. 2d 528, 532 (S.D.N.Y. 2010), *aff'd*, 445 F. App'x 387 (2d Cir. 2011). A fact is considered to be "material" only if it "might affect the outcome of the suit under the governing law . . . ," and a dispute regarding a material fact is considered to be genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *see also Bryant v Maffucci*, 923 F.2d 979, 982 (2d Cir.), *cert. denied*, 502 U.S. 849 (1991). Should the moving party meet this burden, "the nonmoving party must come forward with enough evidence to support a jury verdict in its favor, and the motion will not be defeated merely upon a 'metaphysical doubt' concerning the facts, or on the basis of conjecture or surmise." *Bryant*, 923 F.2d at 982 (internal citations omitted). The party seeking to defeat a motion for summary judgment "must do more than make

6

broad factual allegations and invoke the appropriate statute.  The [party] must also

show, by affidavits or as otherwise provided in Rule 56 . . . , that there are specific

factual issues that can only be resolved at trial."  *Colon v. Coughlin*, 58 F.3d 865, 872

(2d Cir. 1995).

The court's role in ruling on a summary judgment motion is not to resolve issues

of fact, but rather to determine "whether the evidence presents a sufficient

disagreement to require submission to a jury or whether it is so one-sided that one party

must prevail as a matter of law."  *Anderson*, 477 U.S. at 251-52.  In making this

determination, the court must resolve all ambiguities and draw all reasonable inferences

in favor of the nonmoving party.  *Coach Leatherware Co. v. AnnTaylor, Inc.*, 933 F.2d

162,167 (2d Cir. 1991).  When "little or no evidence may be found in support of the

nonmoving party's case . . . [and] no rational jury could find in favor of the nonmoving

party because the evidence to support its case is so slight, there is no genuine issue of

material fact and a grant of summary judgment is proper."  *Gallo v. Prudential Resid.*

*Servs., L.P.*, 22 F.3d 1219, 1223-24 (2d Cir. 1994) (citations omitted).

The Second Circuit has also held that, when deciding whether summary

judgment should be granted in an employment discrimination case, the court "must take

additional considerations into account."  *Desir v. City of New York*, 453 F. App'x 30, 33

(2d Cir. 2011) (citing *Gallo*, 22 F.3d at 1224).  As stated in *Gallo*:

> A trial court must be cautious about granting summary judgment to an
> employer when, as here, its intent is at issue.  Because writings directly
> supporting a claim of intentional discrimination are rarely, if ever, found
> among an employer's corporate papers, affidavits and depositions must
> be carefully scrutinized for circumstantial proof which, if believed, would
> show discrimination.

*Gallo*, 22 F.3d at 1224. Nonetheless, summary judgment remains appropriate in discrimination cases, as "the salutary purposes of summary judgment—avoiding protracted, expensive and harassing trials—apply no less to discrimination cases than to … other areas of litigation." *Meiri v. Dacon*, 759 F.2d 989, 998 (2d Cir. 1985); *see also Abdu–Brisson v. Delta Air Lines, Inc.*, 239 F.3d 456, 466 (2d Cir.) ("It is now beyond cavil that summary judgment may be appropriate even in the fact-intensive context of discrimination cases."), *cert. denied*, 534 U.S. 993 (2001); *Weinstock v. Columbia Univ.*, 224 F.3d 33, 41 (2d Cir. 2000) (affirming grant of summary judgment in favor of employer based on plaintiff's failure to produce evidence of pretext), *cert. denied*, 540 U.S. 811 (2003).

**New York State Education Law § 3813**

New York State Education Law requires that, as a condition precedent to commencement of any action under New York State Law against a school district, a "written verified claim" must be "presented to the governing body of [the] district" within 90 days of the alleged act of discrimination. N.Y. Educ. L. § 3813(1); *Newman v. Leroy Cent. School Dist.*, 2008 WL 974699, at *2 (W.D.N.Y. Apr, 8, 2008). This requirement applies to employment discrimination and retaliation claims brought against a school district in federal court pursuant to the New York Human Rights Law. *See Walter v. Hamburg Cent. Sch. Dist.*, 2007 WL 1480965, at * 8 (May 18, W.D.N.Y. 2007).

The purpose of this notice of claim requirement is to provide prompt notice of "the nature of the claim, the time when, the place where, and the manner in which the claim arose," so as to allow the district to conduct a timely investigation. *Donlon v.*

*Board of Educ. of Greece Cent. School Dist.*, 2007 WL 108470, at *2 (W.D.N.Y. 2007)

(citing *Parochial Bus Sys., Inc. v. Bd. of Educ. of City of New York*, 60 N.Y.2d 539, 547

(1983)).  As noted in *Donlon*, some courts have allowed other types documents –

including notice of an EEOC complaint – to serve as the functional equivalent of the

written verified notice of claim required under § 3813(1), if the document "provides the

necessary information as to the nature of the claim."  *Donlon*, 2007 WL 108470, at *3

(quoting *Mennella v. Uniondale Union Free Sch. Dist.*, 287 A.D.2d 636, 636 (2d Dept.

2001) (petition to Commissioner of Education constituted notice of claim); *see also*

*Bucalo v. East Hampton Union Free Sch. Dist.*, 351 F. Supp. 2d 33, 36-37 (E.D.N.Y.

2005) (letter to district  superintendent, followed by service of EEOC complaint on the

district, constituted sufficient notice of claim); *Kushner v. Valenti*, 285 F. Supp. 2d 314

(E.D.N.Y. 2003) (notice of EEOC complaint sufficient to meet statutory requirement);

*but see Newman*, 2008 WL 974699, at *4 (notice of EEOC charge deemed insufficient

notice under § 3813 because it was served on the district superintendent, not  the

district's "governing body").

In this case, there is no dispute that plaintiff did not serve the Buffalo Board of

Education (the appropriate "governing body") with a written verified claim in accordance

with the requirements of § 3813, at any time.  Plaintiff contends that this failure should

be excused because the information contained in the NYSDHR/EEOC discrimination

charge filed on April 17, 2006 provided defendant with sufficient notice of the essential

elements comprising his claim of age discrimination.  However, there is no evidence in

the record presented to the court on summary judgment to show or suggest that, upon

filing, the charge was served, mailed, or otherwise presented to the Board in satisfaction of the condition precedent to the commencement of this action under New York Human Rights Law.  As clearly stated by the New York Court of Appeals in *Parochial Bus*:

> [F]ailure to present … notice of claim "to the governing body of [the] district or school," here the defendant Board, as required by the clear language of [§ 3813(1)], is a fatal defect mandating dismissal of this action.
>
> The statutory prerequisite is not satisfied by presentment to any other individual or body, and moreover, the statute permits no exception regardless of whether the Board had actual knowledge of the claim or failed to demonstrate actual prejudice.  The statute "must be read and given effect as it is written by the Legislature, not as the court may think it should or would have been written if the Legislature had envisaged all the problems and complications which might arise."

*Parochial Bus*, 60 N.Y.2d at 548-549 (quoting *Lawrence Constr. Corp. v. State of New York*, 293 N.Y. 634, 639 (1944)).

Accordingly, in the absence of any showing that the notice of claim requirement of New York Education Law § 3813(1) has been satisfied, it is respectfully recommended that the Court grant defendant's motion for summary judgment to the extent it seeks dismissal of plaintiff's age discrimination and retaliation claims brought under the New York Human Rights Law, as set forth in the third and fourth causes of action of the Amended Complaint.

**Timeliness of Plaintiff's ADEA Claims**

"In order to file a federal lawsuit under the …ADEA, a plaintiff must file a charge of discrimination with the EEOC within three hundred (300) days after the date of the

alleged unlawful acts." *Liles v. N.Y.C. Dept. of Educ.*, 516 F. Supp. 2d 297, 309 (S.D.N.Y. 2007), *quoted in Grant v. County of Erie*, 2013 WL 49707, at *4 (W.D.N.Y. Jan. 2, 2013)); *see* 29 U.S.C. § 626(d)(1)(B). In this case, plaintiff has conceded in both his written submissions and at oral argument that any claims based on alleged discrete acts of discrimination occurring prior to June 21, 2005 – 300 days from the April 17, 2006 filing of the NYSDHR/EEOC charge – are time-barred.[1]

Accordingly, it is respectfully recommended that defendant's motion for summary judgment be granted to the extent it seeks dismissal of plaintiff's ADEA claims based on any adverse employment action alleged to have occurred prior to June 21, 2005.

## ADEA and Burden-Shifting Under McDonnell Douglas

The ADEA provides that it is "unlawful for an employer to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age …." 29 U.S.C. § 623(a)(1).

Courts examine discrimination claims brought pursuant to the ADEA under the familiar burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Attard v. City of New York*, 451 F. App'x 21, 23 (2d Cir. 2011), *cert. denied*, ___U.S.___, 132 S.Ct. 1975 (2012). Under this framework, the plaintiff

---

[1]As noted by the Supreme Court, the statutory 300-day limitations period for filing an EEOC charge does not bar an employee from using time-barred discriminatory acts "as background evidence in support of a timely claim." *National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002); *see Fratturo v. Gartner, Inc.*, 2013 WL 160375, at *6 (D.Conn. Jan. 15, 2013) (court may consider proffer relating to period before timely-filed claims as background evidence "if reasonably probative of timely, independent discrimination claims."); *Nakis v. Potter*, 422 F. Supp. 2d 398, 410 (S.D.N.Y. 2006) ("[T]ime-barred conduct may still be offered as evidence of discriminatory intent to support timely claims.").

bears the initial burden to establish a *prima facie* case of age discrimination by showing (1) that he was within the protected age group, (2) that he was qualified for the position, (3) that he experienced adverse employment action, and (4) that the action occurred under circumstances giving rise to an inference of discrimination. *Id.* (citing *Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 107 (2d Cir. 2010). "The burden of establishing a *prima facie* case is not a heavy one. One might characterize it as minimal." *Carlton v. Mystic Transp., Inc.*, 202 F.3d 129, 134 (2d Cir.) (citing *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506 (1993) (other citations omitted), *cert. denied*, 530 U.S. 1261 (2000)).

If the plaintiff succeeds in making out a *prima facie* case, the burden shifts to the employer to articulate a "legitimate, nondiscriminatory reason" for the employment action. *McDonnell Douglas*, 411 U.S. at 802. Upon the employer's proffer of a non-discriminatory reason, the presumption of discrimination "drops from the picture," and the plaintiff must come forward with evidence that the proffered reason "is a mere pretext for actual discrimination." *Weinstock*, 224 F.3d at 42 . "In short, the question becomes whether the evidence, taken as a whole, supports a sufficient rational inference of discrimination. To get to the jury, '[i]t is not enough ... to disbelieve the employer; the factfinder must [also] believe the plaintiff's explanation of intentional discrimination.' " *Id.* (quoting *St. Mary's Honor Ctr.*, 509 U.S. at 519). Thus, to satisfy his burden at the final stage of the *McDonnell Douglas* analysis, "the plaintiff must prove, by a preponderance of the evidence, that age discrimination was the 'but-for' cause of the challenged adverse action." *Attard*, 451 F. App'x at 23 (quoting *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 176 (2009)).

**A.** *Prima Facie* **Case**

Defendant does not seriously challenge plaintiff's showing with respect to the first two *prima facie* elements – membership in the protected class, and qualification for the position sought. Indeed, it is not a matter of dispute that plaintiff became a member of the protected class under the ADEA when he turned 40 years of age in June 2004, *see* 29 U.S.C. § 631(a), or that he was certified by New York State as qualified to teach in the subject matter areas of physical education and health.

With regard to the remaining *prima facie* factors, defendant primarily maintains plaintiff cannot establish that he was denied a full-time position under circumstances giving rise to an inference of discrimination because the proof shows that plaintiff was, in fact, offered a full-time position in March 2005, but rejected it. However, as alleged in the Amended Complaint and alluded to during his deposition, plaintiff asserts that he rejected the March 2005 offer because it was a temporary position, not the probationary position to which he felt he was entitled due to his seniority, qualifications, and City of Buffalo residency. In addition, plaintiff refers to evidence in the record on summary judgment supporting his contention that 20 of the 21 full-time probationary physical education teacher applicants hired between 2004 and 2009 were under 40 years of age, and several lived outside the City of Buffalo.

For example, the record reflects that during the 2004-2005 school year alone, nine physical education teachers – all under 40 years of age – were hired to full-time probationary positions, and seven of the applicants who were either hired or declined offers had interview scores comparable to or lower than plaintiff's score of 37. *See*

13

Dkt. #54-2, p. 34 (Sanders Aff., Exh. D); Dkt. #32, pp. 3-8 (Deft's Human Resource

Department Applicant Data).  Plaintiff's "Confidential Interview Report" dated April 4,

2006[2] indicates a total score of 116 (well above the highest score reported for any

applicant for a probationary physical education position in 2004), yet the Report was

marked "NO HIRE!"  Dkt. 48-17, p. 2 (Malican Decl., Exh. O).

Defendant contends that these facts and circumstances are representative of the

younger age of the overwhelming majority of applicants for full-time teaching positions,

changes in the recruitment evaluation process, or other factors having nothing to do

with plaintiff's age (*see generally, e.g.* Dkt. 48-23 (Lloyd Aff.)).  As discussed above,

however, the Court's role on summary judgment is not to resolve the issues raised by

the facts in the record presented, but rather, to determine whether the facts are material

and the issues are genuine, while resolving all ambiguities and drawing all reasonable

inferences in plaintiff's favor.

Viewed in this light, and considering plaintiff's "minimal" burden of production, the

Court finds the evidence in the summary judgment record sufficient to support a rational

jury's determination that plaintiff has established a *prima facie* case of age

discrimination under the standards set forth above.  Accordingly, the burden shifts to

defendant to articulate a legitimate non-discriminatory reason for failing to hire plaintiff

to the full-time probationary position he sought.

---

[2]The Court notes plaintiff's deposition testimony suggesting that this date is wrong, and that the correct date of the interview is April 4, 2005.  Dkt. # 48-5 (Transcript of Pltff's 4/6/2010 Deposition), pp. 37-39.

**B.      Defendant's Non-discriminatory Reasons for Failing to Hire Plaintiff**

Likewise, the record contains sufficient proof to support a reasonable inference that defendant has articulated a legitimate non-discriminatory reason for failing to hire plaintiff to a full-time probationary position during the relevant actionable time period. For example, defendant has submitted the sworn affidavit of Aubrey Lloyd, III, defendant's Executive Director of Physical Education, who was a member of the interview and recruitment panel involved in the evaluation of plaintiff's application in April 2006.  According to Mr. Lloyd, plaintiff "did not present well" during the interview:

> He communicated poorly (other candidates presented much better and could articulate things like lesson plans).  Moreover, the previous year (teaching as a temporary teacher) he received two poor evaluations.  He had also turned down a full-time temporary position with the Board the previous year.

> Mr. Becker's history with the Board indicated poor performance, inconsistency keeping his necessary health/safety certifications as a Phys Ed teacher, and other concerns which prevented him from being considered a candidate for another full-time temporary teacher, or probationary teacher.

Dkt. #48-23, ¶¶  24-25.

Defendant also refers to documentary evidence indicating that, during the spring of 2007, two different principals requested that plaintiff not be assigned as a substitute teacher at their schools, specifically citing his tendency to arrive late and leave early. *See* Dkt. ## 48-18 & 48-19.  Mr. Lloyd states that he has no record or recollection of plaintiff being interviewed for a full-time position with the Physical Education Department since 2006, but had he been interviewed, the assessment of his candidacy would have taken these complaints into consideration.  Dkt. #48-23, ¶ 26.

Plaintiff offers his own explanation for the circumstances of these occurrences and complaints, but acknowledges that, at least for the purposes of applying the *McDonnell Douglas* analytical framework on summary judgment, defendant has proffered a legitimate non-discriminatory rationale for its failure to hire him to a full-time probationary position.  Accordingly, the evidentiary burden shifts back to plaintiff to come forward with evidence that this rationale is a mere pretext for age-based discrimination.

### C.    Pretext

At the third and final step, the presumption of discrimination established by the *prima facie case* has dropped from the case, and "[t]he burden then rests on the plaintiff to prove not only that the proffered non-discriminatory reason was pretextual, but also that the defendant discriminated against the plaintiff."  *Herschman v. City University of New York*, 2011 WL 1210200, at 11 (S.D.N.Y. Feb. 28, 2011) (citing *Slattery v. Swiss Reins. Am. Corp.*, 248 F.3d 87, 93–94 (2d Cir.), *cert. denied*, 534 U.S. 376 (2001)).  Plaintiff may satisfy this "ultimate burden of proving pretext 'either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence.' " *Weiss v. JPMorgan Chase & Co.*, 332 F. App'x 659, 661 (2d Cir. 2009) (quoting *Dister v. Cont'l Group, Inc.*, 859 F.2d 1108, 1113 (2d Cir. 1988)).  Indeed, "[t]o carry this burden, the plaintiff may rely on the evidence presented to establish [his] *prima facie* case, without more."  *Leibowitz v. Cornell Univ.*, 584 F.3d 487, 502 (2d Cir. 2009)

The pretext inquiry "normally focuses upon factual questions such as whether the asserted reason for the challenged action comports with the defendant's policies and rules, whether the rule applied to the plaintiff has been applied uniformly, and whether the putative non-discriminatory purpose was stated only after the allegation of discrimination." *DeMarco v. Holy Cross High Sch.*, 4 F.3d 166, 171 (2d Cir. 1993) (cited in *Weiss*, 332 Fed. App'x at 661). Indeed, the employer's failure to follow its own stated hiring policies, or even its routine procedures, is often cited by the courts as evidence of pretext. *See, e.g., Weinstock*, 224 F. 3d at 45 ("[d]epartures from procedural regularity ... can raise a question as to the good faith of the process where the departure may reasonably affect the decision.") (quoting *Zahorik v. Cornell University*, 729 F.2d 85, 93 (2d Cir. 1984)); *Bonura v. Chase Manhattan Bank, N.A.*, 795 F.2d 276, 277 (2d Cir. 1986) (jury reasonably could have found in favor of ADEA plaintiff based on, *inter alia*, evidence that employer disregarded its own internal Organization and Policy Guide); *Kopman v. City of Centerville*, 871 F. Supp. 2d 875, 896 (D.S.D. 2012) (recognizing that "in some circumstances 'an employer's violation of its own policies may be indicative of pretext.' ") (quoting *Dixon v. Pulaski Cnty. Special Sch. Dist.*, 578 F.3d 862, 871 (8th Cir. 2009), *abrogated on other grounds by Torgerson v. City of Rochester*, 643 F.3d 1031, 1043 (8th Cir. 2011)).

Here, plaintiff focuses on the Buffalo Board of Education's Personnel Policy No. 6170, "Residency Policy for Probationary Teachers and Administrators," which provides for assignment of certified candidates for teaching positions to one of two hiring pools:

    a.    The first pool ["Pool One"] shall consist of those domiciled within
          the City of Buffalo or agree as a condition precedent to

employment that they establish and maintain such residency throughout employment with the Board of Education within six months of appointment.

b. The second pool ["Pool Two"] of candidates shall consist of Non-City of Buffalo residents.

Dkt. #48-11, p. 2. The Policy further provides that Pool Two "shall not be utilized until ["Pool One"] has been exhausted." *Id.* at 3.

A review of defendant's Human Resources Department records supports plaintiff's contention that, at the time he was a Pool One candidate for a full-time, probationary position as a physical education teacher in 2004-06, several Pool Two candidates not within the class protected by the ADEA were hired to full-time positions instead of him. *See* Dkt. #48-7. By way of example, the records reflect the following:

• Michael Bogdan, age 32, was a resident of East Amherst at the time he was hired as a probationary physical education teacher in December 2004. He was a resident of Williamsville in 2006, when he was assigned to a different school. *Id.* at 2.

• Robert Janosz, age 30, was a resident of West Seneca at the time he was hired as a probationary physical education teacher in January, 2006. *Id.* at 3.

• Charles Mahoney, age 35, was a resident of Williamsville at the time he was hired a probationary physical education teacher in September 2004. He was still living in Williamsville in September 2006, when he was reassigned to a probationary position at a different school. *Id.* at 4.

• Derek Swader, age 24, was a resident of Akron at the time he was hired as a probationary physical education teacher in 2004, when he was 24 years of age. He

was still living in Akron when he was assigned to a probationary position at a different school in 2006.  *Id.* at 5.

• Matthew Werder, age 33, was a resident of Tonawanda when at the time he was hired as a probationary physical education teacher in 2005.  *Id.*

 Beyond this apparent disregard for the residency requirements established by Policy No. 6170, the Court's review of the hiring data also reveals that, between 2004 and 2009, no less than 17 candidates were hired as probationary physical education teachers, yet only one was within the class protected by the ADEA.  Construing this data in the light most favorable to plaintiff, and drawing all permissible inferences in his favor, *Weiss*, 332 Fed. App'x at 661, a reasonable jury could conclude that the reasons cited by defendant for not hiring plaintiff to a full-time position during the relevant time period (*i.e.*, performance deficiencies, poor presentation during interviews, rejection of a full-time offer of employment, etc.) were pretextual, and that the real reason was defendant's preference for younger teachers.

**Retaliation**

The ADEA's anti-retaliation provisions make it "unlawful for an employer to discriminate against any of [its] employees ... because such individual ... has opposed any practice made unlawful by this section, or because such an individual ... participated in any manner in an investigation, proceeding, or litigation under this [Act]." 29 U.S.C. § 623(d).  Retaliation claims brought under this provision are also analyzed under the *McDonnell Douglas* burden-shifting framework.  *See Gorzynski*, 596 F.3d at 110; *Jetter v. Knothe Corp.*, 324 F.3d 73, 75 (2d Cir. 2003).

19

First, the plaintiff must establish a *prima facie* case of retaliation by showing: (1) participation in a protected activity; (2) that the defendant knew of the protected activity; (3) an adverse employment action; and (4) a causal connection between the protected activity and the adverse employment action. The plaintiff's burden in this regard is *de minimis* and the court's role in evaluating a summary judgment request is to determine only whether proffered admissible evidence would be sufficient to permit a rational finder of fact to infer a retaliatory motive. If the plaintiff sustains this initial burden, a presumption of retaliation arises. The defendant must then articulate a legitimate, non-retaliatory reason for the adverse employment action. If so, the presumption of retaliation dissipates and the employee must show that retaliation was a substantial reason for the adverse employment action.

*Hicks v. Baines*, 593 F.3d 159, 164 (2d Cir. 2010) (internal quotation marks and citations omitted).

As reflected in the summary judgment record and the discussion above, in this case plaintiff engaged in protected activity by filing a discrimination charge with NYSDHR/EEOC. Notwithstanding plaintiff's failure to demonstrate compliance with the notice of claim requirement of New York Education Law § 3813(1) as a condition precedent to a suit under the state Human Rights Law, it is not disputed that defendant became aware of the charge at some point soon after it was filed. Nor is it a matter of dispute that plaintiff has not been hired for a probationary teaching position since he filed the administrative charge in April 2006. Considering the Human Resource data of record reflecting the hiring of several non-resident (Pool Two) applicants not within the ADEA's protected class, this showing must be deemed sufficient to meet plaintiff's minimal *prima facie* burden on his retaliation claim.

The above discussion also establishes that defendant has sufficiently articulated a legitimate non-discriminatory reason for not hiring plaintiff. Likewise, a rational jury could conclude from the data presented that defendant's rationale for not hiring plaintiff

to a full-time position after April 2006 was a mere pretext, and that the real reason was retaliation for filing the NYSDHR/EEOC charge.

Based on this analysis, made upon careful consideration of the entire record in the light most favorable to plaintiff, the Court concludes that genuine issues of material fact remain for trial regarding discriminatory pretext adequate to defeat defendant's motion for summary judgment dismissing plaintiff's ADEA claims.

## CONCLUSION

For the foregoing reasons, it is recommended that defendant's motion for summary judgment (Dkt. #48) be **GRANTED** to the extent it seeks dismissal of plaintiff's age discrimination and retaliation claims brought under the New York Human Rights Law, as set forth in the third and fourth causes of action of the Amended Complaint, and to the extent it seeks dismissal of plaintiff's ADEA claims based on any adverse employment action alleged to have occurred prior to June 21, 2005.

Further, it is recommended that defendant's motion for summary judgment be **DENIED** in all other respects.

Therefore, it is hereby **ORDERED** pursuant to 28 U.S.C. § 636(b)(1) that:

This Report, Recommendation and Order be filed with the Clerk of the Court.

ANY OBJECTIONS to this Report, Recommendation and Order must be filed with the Clerk of this Court within fourteen (14) days after receipt of a copy of this Report, Recommendation and Order in accordance with the above statute, Fed.R.Crim.P. 58(g)(2) and Local Rule 58.2.

The district judge will ordinarily refuse to consider *de novo*, arguments, case law and/or evidentiary material which could have been, but were not presented to the magistrate judge in the first instance. *See, e.g., Paterson-Leitch Co., Inc. v. Massachusetts Municipal Wholesale Electric Co.*, 840 F.2d 985 (1st Cir. 1988). <u>Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Judge's Order</u>. *Thomas v. Arn*, 474 U.S. 140 (1985); *Wesolek, et al. v. Canadair Ltd., et al.*, 838 F.2d 55 (2d Cir. 1988).

The parties are reminded that, pursuant to Rule 58.2 of the Local Rules for the Western District of New York, "written objections shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be supported by legal authority." <u>Failure to comply with the provisions of Rule 58.2, or with the similar provisions of Rule 58.2 (concerning objections to a Magistrate Judge's Report, Recommendation and Order), may result in the District Judge's refusal to consider the objection.</u>

DATED:     Buffalo, New York
                February  15, 2013


                                   *s/ H. Kenneth Schroeder, Jr.*
                                   H. KENNETH SCHROEDER, JR.
                                   United States Magistrate Judge